IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| SUMTER REGIONAL HOSPITAL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:06-CV-121 (DF) |
| | : | |
| PATTEN SEED COMPANY and | : | |
| TPA OF GEORGIA, | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

**I.   INTRODUCTION**

On March 8, 2006, Plaintiff Sumter Regional Hospital ("SRH") filed suit against Defendants Patten Seed Company ("Patten Seed") and TPA of Georgia ("TPA") in the Superior Court of Macon County, Georgia, alleging numerous causes of action arising under Georgia law.  On April 13, 2006, Defendants removed the suit to this Court, asserting that SRH's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. § 1001, *et seq.*  (Defs.' Not. Rem., doc. 1, at ¶ 5.) Before this Court is Plaintiff's Motion to Remand (doc. 8).  For the reasons stated below, Plaintiff's motion is **DENIED**.

## II.     FACTUAL BACKGROUND

On March 25, 2005, Erma J. Ray was hospitalized at SRH.  At that time, Mrs. Ray's husband, Rufus A. Ray, was employed by Defendant Patten Seed.  Mr. Ray's employee group benefit policy, *The Patten Seed Company & Affiliates Group Medical Plan* ("Plan"), was administered through Defendant TPA, and listed as Mrs. Ray's primary insurer on her SRH patient-registration form.  Upon Mrs. Ray's admission, Mr. Ray signed and executed a "Patient Consent Form," which included an "Assignment of Insurance Benefits And Patient's Certification Authorization To Release Information And Payment Request." (Consent Form, Pl.'s Compl., Ex. B.)  With this assignment, Mr. Ray authorized "payment of medical benefits and contractual and statutory rights to SRH, physicians, and/or provider(s) for the benefits otherwise payable" to him.  (Id.)  Mr. Ray also:

> authorize[d] SRH to receive all insurance benefits and settlements whether hospital, medical, or liability insurance including, but not limited to, the proceeds of any settlement or judgment of any third party claim, to the extent of any and all services rendered grant[ed] SRH a lien upon all such benefits or third party claims or recoveries.

(Id.)

The day after Mrs. Ray's admission, an SRH representative contacted a TPA employee, who verified that Patten Seed was Mrs. Ray's primary insurer.  The TPA employee also stated that the effective date of coverage was February 1, 1998, and the

policy's coverage was set at a $500 deductible, with an 80% benefit-coverage ceiling.

Mrs. Ray remained hospitalized at SRH from March 25, 2005 until May 2, 2005. While hospitalized, Mrs. Ray incurred medical expenses totaling $248,691.36. On May 13, 2005, an employee in SRH's Billing Office forwarded Mrs. Ray's itemized bill and medical records to TPA. On June 7, 2005, a TPA representative confirmed receipt of SRH's claim. On August 4, 2005, an SRH employee contacted TPA and inquired about the status of the SRH bill. The following day, TPA denied SRH's reimbursement claim, claiming that the medical expenses incurred by Mrs. Ray were not covered by Patten Seed's employee insurance plan because Mrs. Ray's health insurance had been terminated on March 1, 2005. In an effort to confirm the effective date of Mrs. Ray's health-insurance termination, SRH contacted Patten Seed's Human Relations Office, and was again informed that Mrs. Ray's health-insurance coverage was terminated on March 1, 2005. Further investigation by SRH revealed, however, that Mr. Ray did not terminate Mrs. Ray's Patten Seed insurance coverage until July 7, 2005,[1] and that Mr. Ray continued to pay premiums to Patten Seed for Mrs. Ray's health-insurance coverage until August 1, 2005.

---

[1] The precise date on which Mrs. Ray's insurance coverage through Patten Seed was terminated is a disputed issue of fact. For purposes of this Order, however, the Court assumes that Mrs. Ray was covered by Patten Seed's employee insurance plan during her hospitalization at SRH, and that her coverage was terminated on July 7, 2005.

On October 19, 2005, SRH sent demand letters to Patten Seed and TPA. When Patten Seed and TPA refused to make payment on SRH's claim, SRH filed the instant suit in the Superior Court of Macon County, Georgia.

## III.    LEGAL DISCUSSION

SRH's original complaint asserted state-law claims for: (1) breach of contract; (2) specific performance; (3) bad faith refusal to pay claims; and (4) fraud.  Defendants, invoking this Court's federal-question jurisdiction under 28 U.S.C.A. § 1331, removed Ethridge's lawsuit on the basis of complete ERISA preemption.

SRH submits that this case should be remanded to state court for three reasons. First, "Defendants have not met their burden of proof . . . that the insurance plan under which Plaintiff's patient obtained health insurance coverage was actually an ERISA plan." (Pl.'s Br. Supp. Mot. Remand, doc. 9, at 2.)  Second, "Plaintiff's Complaint is not based upon ERISA . . . [t]he fact that the insurance plan may be an ERISA plan does not necessarily mean . . . that a federal question is created." (Id. at 3.) Third, "Defendants have not established that the employee group benefit plan in question is not exempt from ERISA under the Safe Harbor Provisions of 29 C.F.R. § 2510.3-1(j)." (Id.) In response, Defendants argue that this Court has federal-question jurisdiction over the instant action because ERISA wholly displaces SRH's state-law claims through complete preemption. (Def. TPA's

Br. Opp. Pl.'s Mot. Remand, doc. 10, at 5.)  SRH maintains that Defendants' complete-preemption argument comes too late because Defendants failed to establish that Patten Seed's employee benefit plan was an ERISA plan *at the time of removal*. (Pl.'s Reply Br., doc. 13, at 4.)

**A.    Was Defendant Patten Seed Required to Allege All Facts Supporting ERISA-Based Jurisdiction in Its Notice of Removal?**

SRH initially argues that remand is required because Defendant Patten Seed's Notice of Removal did not allege all facts essential to its claim that federal-question jurisdiction existed based on ERISA preemption.  In support of its argument, SRH cites four cases decided by the Honorable William M. Acker, Jr., United States District Judge for the Northern District of Alabama: *Mitchell v. Investors Guar. Life Ins. Co.*, 861 F. Supp. 1039 (N.D. Ala. 1994) ("*Mitchell I*") (granting plaintiff's motion to remand due to defendants' failure to allege facts necessary to demonstrate existence of ERISA-qualified plan in the notice of removal); *Mitchell v. Investors Guar. Life Ins. Co.*, 868 F. Supp. 1344  (N.D. Ala. 1994) ("*Mitchell II*") (granting plaintiff's second motion to remand, finding facts supporting ERISA-based jurisdiction alleged in defendants' renewed notice of removal  could and should have been alleged in initial notice of removal) ; *Bryant v. Blue Cross & Blue Shield of Ala.*, 751 F. Supp. 968 (N.D. Ala. 1990); *Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822

(N.D. Ala. 1988).  In *Bryant*, Judge Acker held that "[a] removal based on the existence of a federal question must allege all facts essential to the existence of that federal question. The existence of a federal question cannot be left to mere speculation." **Bryant**, 751 F. Supp. at 969.  Judge Acker reiterated this principle in *Mitchell I*, holding that, "[i]n an ERISA removal, the well-pleaded complaint rule disappears and is replaced by the well-pleaded notice-of-removal rule." **Mitchell**, 861 F. Supp. at 1040.  To avail himself of ERISA's preemption provisions, "a removing defendant must allege *facts* to show that ERISA governs or, in other words, that in fact and law, an ERISA-qualifying plan is involved" in his notice of removal.  **Id.** at 1041.

It is clear that, in its Notice of Removal, Patten Seed offered virtually no facts to support its contention that this Court has federal-question jurisdiction based on ERISA, aside from the following statement: "Patten Seed [ ] provided its employee, Rufus A. Ray, [ ] a qualified employee benefit plan under" ERISA. (Defs.' Not. Rem., doc. 1, at ¶ 6.) Only in their respective responses to SRH's Motion to Remand did Defendants, for the first time, provide the Court with a copy of the employee-benefit plan at issue, and allege that the necessary elements for complete ERISA preemption existed in this case.

Notwithstanding Defendant Patten Seed's failure to fully support its Notice of Removal with facts demonstrating that ERISA preemption exists in this case, the Court will

6

not, at this time, adopt the "well-pleaded notice-of-removal" rule oft-applied in the Northern District of Alabama. Because neither the Supreme Court nor the Eleventh Circuit has ever pronounced a "well-pleaded notice-of-removal" rule, the Court cannot, in good conscience, remand this case to the state court solely because Defendants did not fully expound on the basis for this Court's ERISA-based federal-question jurisdiction in their Notice of Removal. Moreover, the Court's application of the "well-pleaded notice-of-removal" rule would frustrate Congress's intent to grant federal courts subject-matter jurisdiction over ERISA-based claims in cases wherein federal-question jurisdiction based on ERISA preemption is deemed to exist. *See* 28 U.S.C. § 1331 (West 2006). Accordingly, the Court will not grant Plaintiff's Motion to Remand on the above-stated grounds.

**B.     Are SRH's State-Law Claims Completely Preempted by ERISA?**

The Court will now address Defendants' contention that their removal of this case was proper because SRH's state-law claims are completely preempted by ERISA. SRH maintains that the removal of this case was improper because SRH "did not assert or allege any claims under [ERISA]" in its Complaint. (Pl.'s Br. Supp. Mot. Remand, doc. 9, at 2.)

Complete preemption, or "superpreemption," "arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999)

(citation omitted). "When Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331." *Id.* at 1211-12 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "Therefore, federal courts have subject-matter jurisdiction over claims that have been superpreempted, and defendants may remove to federal court those actions that contain such claims." *Id*. at 1212. Here, the issue is whether some or all of SRH's claims against Defendants are superpreempted by ERISA.

Regardless of how a plaintiff's actual claims are cast in his or her complaint, those claims (recast as ERISA claims) will be completely preempted when four elements are satisfied. "First, there must be a relevant ERISA plan." *Id.* (citations omitted). "Second, the plaintiff must have standing to sue under that plan." *Id.* (citation omitted). "Third, the defendant must be an ERISA entity." *Id.* (citations omitted). "Finally, the complaint must seek compensatory relief akin to that available under [29 U.S.C.] § 1132(a); often this will be a claim for benefits due under a plan." *Id.* (citations omitted).

All of SRH's state-law claims are superpreempted. First, the *Patten Seed Company & Affiliates Employment Benefit Plan* ("Plan") is an ERISA plan because "there are 'intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and

collect benefits.'" *Id*. at 1214 (quoting ***Donovan v. Dillingham***, 688 F.2d 1367, 1372 (11th Cir. 1982)); *see* Patten Seed Plan, Def. TPA's Resp. Pl.'s Mot. Remand, doc. 10, Attach. 1. Moreover, the Plan is not exempt from ERISA preemption under the Safe Harbor Provisions of 29 C.F.R. § 2510.3-1(j). The Safe Harbor Provisions except from the definition of "employee welfare benefit plan" certain group or group-type insurance programs offered by an insurer to employees. 29 C.F.R. § 2510.3-1(j). For an employee-benefits program to qualify for the exception, the employer must "refrain from *any* functions other than permitting the insurer to publicize the program and collecting premiums." ***Butero***, 174 F.3d at 1213. Here, Patten Seed intended for the Plan to comply with the Welfare Benefit Provisions of ERISA, and, by making contributions to the Plan, disqualified itself from ERISA exemption under the Safe Harbor Provisions. *Id.; see* Patten Seed Plan.

Second, SRH, as an assignee of a Plan participant's insurance benefits, has standing to sue under the Plan. Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of an employee benefit plan may initiate civil proceedings to recover benefits under the terms of the plan. In *Cagle v. Bruner*, the Eleventh Circuit held that "neither 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection." 112 F.3d 1510, 1515 (11th Cir. 1997); *see also **HCA Health Svcs. of Ga., Inc. v. Employers Health Ins. Co.***, 240 F.3d 982, 991 (11th Cir. 2001).

As the Court explained in *Cagle*, and again in *HCA*:

> [i]f provider-assignees cannot sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured's medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to "providers [, who] are better situated and financed to pursue an action for benefits owed for their services."

*Cagle*, 112 F.3d at 1515. Given the Eleventh Circuit's holdings in *Cagle* and *HCA*, the Court concludes that SRH, as a provider-assignee, has standing to sue for the recovery of benefits under the Plan at issue in this case.

Third, Defendant Patten Seed is an ERISA entity. Where there is an ERISA plan, there is also an ERISA entity. **Butero**, 174 F.3d at 1213. Here, because the Patten Seed Plan is an ERISA plan, Patten Seed is an ERISA entity—one with control over the payment of benefits and the determination of plan participants' rights. *See id*.

Finally, contrary to SRH's assertion that its claims arise under state law only, the Court finds that SRH seeks compensatory relief akin to the relief available under 29 U.S.C. § 1132(a). Pursuant to § 1132(a), a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C. § 1132(a)(1)(B) (West 2006). In *Butero*, the Eleventh Circuit held that "claims against an insurer for fraud . . . are in essence claims 'to recover benefits due to [the beneficiary] under the terms of the Plan.'" ***Butero***, 174 F.3d at 1213 (quoting 29 U.S.C. § 1132(a)(1)(B)). The court further determined that, because the plaintiff's bad faith refusal- to-pay and breach-of-contract claims both pursued the same relief as the fraud claims (i.e. payment of health-insurance benefits), those claims were also essentially claims to recover benefits due under the plan. *Id.* Based on the foregoing principles, the Court concludes that SRH's state-law claims for breach of contract, bad faith, and fraud are properly recast as claims for compensatory relief available under 29 U.S.C. § 1132(a) because SRH is seeking payment of health-insurance benefits due under the Plan.

Accordingly, because all of the elements for ERISA superpreemption have been satisfied, the Court finds that it has federal-question jurisdiction over the subject matter of this case.

### IV. CONCLUSION

For the reasons stated above, Plaintiff SRH's Motion to Remand (doc. 8) the instant action to the Superior Court of Macon County, Georgia is hereby **DENIED**.

SO ORDERED, this 1st day of December, 2006.

/s/ Duross Fitzpatrick
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab

11